UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CR-0019-CVE |
| ) | |
| COREY SHAMON MCKINNEY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court are defendant's Motion to Suppress (Dkt. # 45) and Defendant's Motion in Limine to Preclude Evidence or Argument Concerning Amount of Money in the Possession of Defendant at Time of his Arrest (Dkt. # 30). Defendant argues that evidence seized during two searches of his residence should be suppressed, because the affidavits in support of each warrant failed to establish that probable cause existed for the searches. Dkt. # 45. Defendant also asks the Court to exclude evidence that almost $6,000 in cash was seized from his person when he was arrested on November 20, 2019. Dkt. # 30. Plaintiff responds that the affidavits in support of both search warrants provide sufficient facts from which a reasonable magistrate could have found probable cause for the searches, and the large amount of cash seized from defendant's person on November 20, 2019 is relevant to show that he was engaged in the trafficking of illegal drugs. Dkt. ## 31, 48.

I.

On November 14, 2019, Tulsa Police Department (TPD) Officer Mike Cawiezell presented an affidavit for search warrant to a magistrate, seeking a search warrant for a residence located at

4331 North Elgin Avenue in Tulsa, Oklahoma.[1] Cawiezell believed that evidence related to the trafficking of methamphetamine and other controlled substances would be found at the residence, and he also requested permission to seize currency, financial records, proof of residency, cellular phones, and firearms. Dkt. # 45-1, at 1. The affidavit states that Cawiezell had been in contact with a reliable confidential informant (RCI) who had advised Cawiezell that a person named "Corey," going by the street name of "Crazy," was selling of a large amount of methamphetamine. Id. Corey was allegedly a black male living in north Tulsa, and the RCI stated that Corey was also in possession of firearms. Id. Cawiezell sought to verify the information provided by the RCI, and he conducted a records search on the Tulsa Regional Area Criminal Information System (TRACIS). Cawiezell identified Corey McKinney as a possible suspect. McKinney was a 42 year old black male residing in north Tulsa, and McKinney was known to go by the nickname "Crazy." Id.

Cawiezell showed a booking photograph of McKinney to the RCI, and the RCI identified McKinney as the "Corey" or "Crazy" he had described to Cawiezell. Id. at 2. On October 28, 2019, the RCI contacted Cawiezell and told him that McKinney was residing at 4331 North Elgin Avenue. Id. at 2. Cawiezell used TRACIS to verify that this was McKinney's address and, as recently as August 22, 2019, McKinney had filed a burglary report with TPD identifying the address as his

---

[1] The Court has reviewed defendant's motion to suppress and he does not request an evidentiary hearing on his motion. Dkt. # 45. Defendant's motion challenges the existence of probable cause in two affidavits for search warrant, and the Court will consider only statements within the four corners of the affidavits when determining whether a magistrate could have found probable cause to issue search warrants for defendant's residence and whether police officers acted in good faith when relying on the warrants. See United States v. Knox, 883 F.3d 1262, 1272 (10th Cir. 2018) (district court ruling on motion to suppress challenging existence of probable cause must consider only statements within the four corners of the affidavit and information actually disclosed to the magistrate who issued the warrant). Both parties' arguments are limited to the statements within the four corners of the affidavits, and the Court finds that an evidentiary hearing is unnecessary.

residence. Id. On November 6, 2019, Cawiezell spoke to the RCI and was advised that McKinney possessed methamphetamine, heroin, and a firearm at 4331 North Elgin Avenue. Id. Within 72 hours of the affidavit being sworn before a magistrate, the RCI informed Cawiezell that McKinney had received a large shipment of methamphetamine and the methamphetamine was being stored at 4331 North Elgin Avenue. The affidavit states that the RCI had provided information in excess of three times that turned out to be reliable, and Cawiezell believed that the RCI's information concerning "Corey" was reliable. Id. Cawiezell conducted a criminal records check for McKinney and found that he had prior convictions for robbery, possession of a firearm after former felony conviction, using an offensive weapon in a felony, and distribution of a controlled substance. Id. McKinney had been on probation for weapons and drug offenses until November 7, 2019. Id.

Cawiezell obtained a search warrant for 4331 North Elgin Avenue and the warrant was executed on November 20, 2019. TPD officers found 16.47 grams of methamphetamine, 26.33 grams of marijuana, heroin, two firearms, ammunition, and body armor in the residence, and McKinney had $5,814 in currency on his person. Dkt. # 45-2, at 2. McKinney was arrested after the execution of the search warrant, and he was released on bond on December 10, 2019. Id.

In January 2020, Cawiezell again sought a search warrant for 4331 North Elgin Avenue, and the affidavit for search warrant recites many of the same facts relied upon to obtain the first search warrant. Dkt. # 45-2, at 1-2. In addition, Cawiezell collected trash from the residence and brought it to a secondary location for further investigation. Id. at 2. The affidavit states that officers did not enter the property when collecting the trash. Id. Cawiezell found a plastic wrapper containing a green leafy substance and a plastic baggie wrapped in black duct tape, and he contacted a canine unit to conduct a dog sniff of these items. Id. Loki, a drug-certified canine, alerted to the presence of

illegal narcotics on the items taken from the trash. Id. Cawiezell obtained a second search warrant for 4331 North Elgin Avenue and the warrant was executed on January 9, 2020. Police recovered a firearm silencer and marijuana during the second search. Dkt. # 48, at 4.

On February 6, 2020, a grand jury returned an indictment charging defendant with being a felon in possession of a firearm (count one), possession of heroin, methamphetamine, and marijuana with intent to distribute (counts two, three, and four), maintaining a drug-involved premises (counts five and six), and possession of a firearm in furtherance of a drug trafficking crime (count seven). Dkt. # 2. A superseding indictment has been returned that includes a charge for possession of an unregistered silencer (count eight). Dkt. # 34.

**II.**

Defendant argues that the affidavits for both search warrants failed to establish probable cause to believe that evidence related to firearm or drug offenses would be found at his residence. Dkt. # 45. Defendant's primary argument is that the affidavits do not contain sufficient facts to establish the reliability of the RCI, and no reasonable magistrate could have relied on the RCI's statements as a basis to find probable cause. Id. at 2-4. He further argues that the Leon[2] exception does not apply, and the second search warrant was tainted by the alleged illegality of the prior search of defendant's residence. Id. at 5.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability

---

[2]   United States v. Leon, 468 U.S. 897 (1984).

that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006). A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

Defendant argues that probable cause was lacking for the initial search warrant, because the affidavit for the November 2019 search fails to establish the reliability of the RCI. When probable cause is based on an informant's tip, "the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge." United States v. Hendrix, 664 F.3d 1334, 1139 (10th Cir. 2011). These factors are not absolute requirements for a magistrate's reliance on information provided by an informant, and the reviewing magistrate must consider the totality of the circumstances in determining whether an informant's tip should be considered in the probable cause inquiry. Id. If there is sufficient independent corroboration of the informant's information, there is no need for a magistrate to consider the informant's reliability. United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000). If the basis for the informant's tip is not fully described in the affidavit, the court should consider whether

5

the tip contains "the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009).

Defendant argues that the affidavit for the November 2019 search fails to state sufficient facts suggesting that the RCI had a long-term relationship with defendant or that the RCI had actually engaged in a criminal transaction with defendant. Dkt. # 45, at 2-3. He acknowledges that there are statements in the affidavit in which Cawiezell corroborated information provided by the RCI, but he argues that these statements do not make up for the lack of evidence that the RCI actually provided drugs or a firearm to defendant. Id. at 3. The cases cited by defendant do not establish that it is necessary for the informant to actually engage in a criminal transaction with a suspect in order for a tip to be deemed reliable by law enforcement officers, although this can be a relevant factor when assessing the reliability of an informant's tip. See United States v. Knox, 883 F.3d 1262 (10th Cir. 2018); United States v. Pulliam, 748 F.3d 967 (10th Cir. 2014). Instead, the law is clear that the Court must consider the totality of the circumstances when considering whether a reasonable magistrate would have relied upon the information provided by the informant as part of the probable cause analysis.

In this case, the RCI advised Cawiezell that a person with the name of "Corey" and a street name of "Crazy" was selling methamphetamine and was in possession of a firearm, and the person was a black male living in North Tulsa. Dkt. # 45-1, at 1. Cawiezell used this information as a starting point for his investigation, and he used TRACIS to identify a potential suspect, McKinney. Id. McKinney was a black male with the nickname of "Crazy, and TRACIS listed an address in north Tulsa for McKinney. Id. Cawiezell showed the RCI a booking photograph of McKinney, and

6

the RCI identified McKinney as the person the RCI initially described to Cawiezell. The RCI subsequently notified Cawiezell that McKinney resided at 4331 North Elgin Avenue. Id. at 2. Cawiezell conducted additional research and discovered the McKinney had filed a burglary report on August 22, 2019 stating that he resided at 4331 North Elgin Avenue. Id. The RCI advised Cawiezell on two occasions in November 2019 that McKinney was in possession of illegal drugs, including information that McKinney had come into possession of a large amount of methamphetamine within 72 hours of Cawiezell presenting the affidavit to a magistrate. Id. The affidavit lists McKinney's criminal history, and McKinney had prior convictions for drug and firearm offenses. Id. The affidavit also states that McKinney was on probation until November 7, 2019 for firearm and drug offenses. Id.

This is not a case where a police officer relied solely on an uncorroborated tip from an informant, and the affidavit clearly sets out the investigative steps that Cawiezell took to confirm important aspects of the information provided by the RCI. Defendant is correct that the affidavit does not state that the RCI engaged in a drug transaction with defendant or provided defendant with a firearm. Dkt. # 45, at 3. However, this evidence is not required in every case in which a police officer relies on an informant's tip, and a court must determine under the totality of the circumstances whether the information provided by the RCI should be considered as part of the probable cause analysis. Hendrix, 664 F.3d at 1139. Defendant would have a colorable argument for the suppression of evidence if Cawiezell had immediately relied upon the information provided by the RCI without additional investigation, but the November 2019 affidavit establishes that Cawiezell took steps to identify the suspect, locate an address for the suspect, review the suspect's criminal history, and allow the RCI to gather additional evidence concerning when defendant was

actually in possession of illegal drugs or firearms. In cases when the officer corroborates the tip, the reliability of the RCI becomes substantially less important. Danhauer, 229 F.3d at 1007. The Court finds that Cawiezell took sufficient steps to confirm the information provided by the RCI, and a magistrate presented with the affidavit for search warrant could reasonably have relied on the RCI's statements to Cawiezell as part of the probable cause analysis.

The Court has reviewed the affidavit for the November 2019 search of defendant's residence, and finds that the affidavit establishes probable cause to believe that evidence related to drug and firearm offenses would be found at 4331 North Elgin Avenue. The affidavit provides shows that Cawiezell took reasonable steps to confirm the identity of the suspect and the suspect's correct address, and he waited until the RCI could confirm that the suspect had recently received a shipment of methamphetamine before seeking a search warrant. The Court has determined that it was reasonable for the magistrate to rely on the information provided by the RCI as part of the probable cause analysis. The affidavit establishes a fair probability that evidence related to the crime of possession of a controlled substance with intent to distribute would be found at 4331 North Elgin Avenue, and the search warrant for the November 2019 search of this address was supported by probable cause.

Defendant's argument for suppression of the evidence seized during the January 2020 search is primarily based on the alleged illegality of the prior search. Dkt. # 45, at 5. The Court has determined that the affidavit for the November 2019 search stated sufficient facts to establish probable cause for the search, and it was reasonable for Cawiezell to advise the magistrate of the same facts when seeking a warrant for a second search in January 2020. In the affidavit for the January 2020 search, Cawiezell provided additional information about the evidence seized from the

residence in the November 20, 2019 search. Cawiezell also conducted a trash pull on January 2, 2020, and he observed a plastic wrapper containing a green, leafy substance and a torn plastic baggie wrapped in black duct tape. Dkt. # 45-2, at 2. Based on his training and experience, Cawiezell knew that this type of packaging was used in narcotics trafficking, but he contacted a canine unit before seeking a search warrant. Id. The drug dog conducted a sniff of materials taken from defendant's trash, and the drug dog alerted to the presence of narcotics. Id. Considering the totality of the circumstances, the Court finds that the affidavit (Dkt. # 45-2) establishes that probable cause existed for the second search of defendant's residence in January 2020. The affidavit sets out facts related to the initial investigation into defendant, the evidence seized during the November 2019 search, defendant's recent arrest and criminal history related to drug and firearm offenses, and the trash pull and dog sniff, and this evidence is sufficient to establish probable cause for the January 2020 search of defendant's residence.

Even if the Court were to find either of the search warrants facially invalid, plaintiff argues that the officer who executed the search relied on the warrant in good faith and no evidence should be suppressed. There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court. United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993). When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted." Id. The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting

9

Leon, 468 U.S. at 920). Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and would penalize police for a magistrate's error in issuing the warrant. Leon, 468 U.S. at 920-21. Even if defendant had shown some technical deficiency with either warrant, the Court finds that it was reasonable for police to rely on the search warrants for 4331 North Elgin Avenue in November 2019 and January 2020, and the Court would not suppress the evidence seized during these searches.

### III.

Defendant has filed a motion in limine asking the Court to exclude evidence that he had a large amount of currency on his person when he was arrested on November 20, 2019, because the evidence is not relevant and the evidence is unfairly prejudicial to defendant. Dkt. # 30. Plaintiff responds the currency should not be viewed in isolation and, together with the drugs, firearms, and drug trafficking paraphernalia seized from defendant's home, the currency is relevant to show that did not possess illegal drugs merely for personal use. Dkt. # 31, at 2-3. Defendant offers no argument in support of his request to exclude this evidence, and he merely recites Fed. R. Evid 401, 402, and 403 in his motion. The Court finds that the currency seized from defendant's person is potentially relevant to show that defendant was engaged in the trafficking of illegal drugs, and defendant has not shown that his possession of almost $6,000 in currency would be irrelevant or unfairly prejudicial at trial.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress (Dkt. # 45) and Defendant's Motion in Limine to Preclude Evidence or Argument Concerning Amount of Money in the Possession of Defendant at Time of his Arrest (Dkt. # 30) are **denied**.

**DATED** this 1st day of December, 2020.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE