UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-019-CVE |
| | ) | (24-CV-145-CVE-CDL) |
| COREY SHAMON MCKINNEY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Now before the Court is defendant's motion to vacate, set aside or correct sentence under

28 U.S.C. § 2255 (Dkt. # 115). Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of

a court established by Act of Congress claiming the right to be released upon the ground that the

sentence was imposed in violation of the Constitution or laws of the United States . . . may move

the court which imposed the sentence to vacate, set aside or correct the sentence." Construing

defendant's § 2255 motion broadly, he could be asserting three grounds for relief challenging his

convictions and sentence. Dkt. # 115. Plaintiff has filed a response (Dkt. # 121) to defendant's

motion. Defendant has filed a reply (Dkt. # 122), and his § 2255 motion is ripe for adjudication.

I.

On February 6, 2020, a grand jury returned an indictment charging defendant with being a

felon in possession of a firearm (count one), possession of heroin, methamphetamine, and marijuana

with intent to distribute (counts two, three, and four), maintaining a drug involved premises (counts

five and six), and possession of a firearm in furtherance of a drug trafficking crime (count seven).

Dkt. # 2. Defendant was arrested and made his initial appearance on March 17, 2020, and the Court

appointed Scott Graham to represent defendant. Dkt. # 9. Defendant asked the Court to appoint

substitute counsel after Graham allegedly failed to request a preliminary hearing, and the Court appointed Terry Weber as substitute counsel. Dkt. ## 18, 21. Defendant attempted to file pro se motions to suppress evidence and dismiss the indictment, but the motions were stricken due the fact that defendant was represented by counsel. See Dkt. ## 20, 23, 28. Defendant filed a motion for substitution of counsel, and the Court appoint Fred Randolph Lynn as substitute counsel. Dkt. ## 38, 40.

Lynn filed a motion to suppress (Dkt. # 45), asserting that a search warrant for the search of 4331 North Elgin Avenue in Tulsa, Oklahoma was not supported by probable cause, because the affidavit for search warrant failed to establish the reliability of the confidential informant whose information provided the basis for the search. Based on this argument, Lynn argued that a subsequent search at 4300 East 43rd Street North was tainted by the fruit of the poisonous tree. Dkt. # 45, at 5. The affidavits for search warrant at issue in this case were drafted by Tulsa Police Department (TPD) Officer Mike Cawiezell after he received information from a reliable confidential informant (RCI) that a black male identified as "Corey" or "Crazy" was selling methamphetamine, and "Corey" was also in possession of a firearm. Dkt. # 51, at 2. Cawiezell attempted to verify the RCI's information, and he identified a possible suspect living in north Tulsa using the nickname "Crazy." Id. Cawiezell showed the RCI a photograph of Corey McKinney, and the RCI identified McKinney as the person he knew as "Corey" or "Crazy." Id. The RCI subsequently informed Cawiezell that McKinney was residing at 4331 North Elgin Avenue in Tulsa, and Cawiezell used the Tulsa Regional Area Criminal Information System (TRACIS) to confirm that this was McKinney's address. Id. at 2-3. On November 6, 2019, the RCI advised Cawiezell that McKinney was in possession of methamphetamine, heroin, and a firearm at this address and, within 72 hours

of seeking a search warrant, Cawiezell received information that McKinney had acquired a large amount of methamphetamine at 4331 North Elgin Avenue. Id. at 3. A records check revealed that McKinney had several prior felony convictions, and he was on probation for weapons and drug offenses as of November 7, 2019. Id. at 3. Cawiezell obtained a search warrant for 4331 North Elgin Avenue and the search warrant was executed on November 20, 2019. Police officers recovered quantities of methamphetamine, marijuana, and heroin, two firearms, ammunition, and body armor from the residence. Id. McKinney was arrested following the search and he was released on bond, but he remained under investigation after the November 20, 2019 search. Id. Cawiezell obtained a second search warrant for 4331 North Elgin Avenue, which was executed on January 9, 2020, and police recovered marijuana and a silencer during the second search. Id. at 4.

The Court denied defendant's motion to suppress without holding an evidentiary hearing. The affidavit for the November 2019 search warrant contained sufficient information corroborating the claims of the RCI, and the Court rejected defendant's argument that it was necessary for the RCI to engage in actual criminal activity with a defendant to establish the RCI's reliability. Id. at 6. Considering the totality of the circumstances, the Court found that the November 2019 affidavit established probable cause for a reasonable magistrate to believe that evidence of drug and firearm offenses would be found at 4331 North Elgin Avenue. Id. at 8. Defendant's argument for suppression of the January 2020 search was primarily based on the alleged illegality of the November 2019 search. Id. The Court instead focused on the sufficiency of the facts provided in the affidavit for the January 2020 search warrant. Cawiezell's affidavit recited facts that were previously included in the affidavit for the November 2019 search warrant, but he also included new facts gathered during a January 2, 2020 trash pull that suggested that evidence of drug crimes would

be found in the residence. Id. at 9. The Court found that the November 2019 and January 2020 search warrants were supported by probable cause, and the Court rejected defendant's request to suppress evidence during the searches of 4331 North Elgin Avenue.

Defendant exercised his right to a jury trial, and the trial began on June 21, 2021. Lynn made an opening statement acknowledging that firearms and drugs were found in the subject residence, but he argued that plaintiff had no evidence showing how many people had access to the residence during the relevant time period. Dkt. # 98, at 24. He argued that there was no evidence, such as fingerprint or DNA evidence, tying defendant to the residence, and he asked the jury to find defendant not guilty at the conclusion of the trial. Id. at 25. Several law enforcement officers, including Cawiezell, testified at trial, and Lynn extensively cross-examined Cawiezell about the searches of the residence. Cawiezell admitted that the he did not attempt to document the amount of vehicular or foot traffic to and from the residence, and he did not know whether anyone, including defendant, actually lived at the residence. Id. at 109-12. Lynn asked numerous questions about the rifle that was found in a closet during the November 2019 search, and Cawiezell testified that he never personally observed defendant with the rifle. Id. at 113. Cawiezell also testified that he had no information that anyone had actually seen defendant in possession of the rifle, and he had not seen a photograph showing defendant with the rifle. Id. Lynn asked a series of similar questions about a pistol that was recovered from the residence, and Cawiezell testified that he had no personal knowledge that defendant physically possessed the pistol at any time prior to the search. Id. at 114-15. As to the methamphetamine found in the residence, Lynn was able to establish that Cawiezell had not personally seen defendant in possession of methamphetamine, but Lynn declined to ask whether Cawiezell received other information tying defendant to the methamphetamine. Id. at 115-

19. Lynn questioned Cawiezell about marijuana and heroin seized from the residence, and he specifically asked Cawiezell whether anyone had told him that defendant was in possession of marijuana or heroin. Id. at 121-22.

The jury found defendant guilty on all counts, and defendant's sentencing hearing was set for October 4, 2021. Dkt. ## 81, 83. The Court sentenced defendant to 137 months imprisonment. Dkt. # 88. Defendant filed a notice of appeal (Dkt. # 89) and Lynn filed a motion to withdraw from his representation of defendant after filing the notice of appeal. Lynn was permitted to withdraw from his representation of defendant, and the office of the Federal Public Defender for Colorado and Wyoming was appointed to represent defendant. On appeal, defendant argued that Caweizell's trial testimony substantially differed from the statements contained in his affidavits for search warrant, and the Court should have reconsidered its decision to deny defendant's motion to suppress in light of these inconsistencies. Defendant also argued that the Court should have sua sponte held a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), based on the allegedly false or misleading statements made by Cawiezell in his affidavits. The Tenth Circuit rejected defendant's arguments and affirmed his convictions and sentence based on its finding that there was no contradiction between Cawiezell's affidavits and his trial testimony. Dkt. # 111, at 7-8.

**II**.

Defendant argues that his attorney was ineffective for failing to request a Franks hearing or failing to renew defendant's motion to suppress after Cawiezell testified at trial, because key aspects of Cawiezell's testimony allegedly contradicted statements he made in his affidavits for search warrants. Dkt. # 115, at 17. Defendant could also be arguing that Lynn failed to raise a defense to the § 924(c) charge (count seven), and he also claims that Lynn failed to conduct an adequate

investigation into whether defendant resided at 4331 North Elgin Avenue at the time of the November 2019 search.

The primary argument defendant raised on direct appeal was whether the Court should have sua sponte ordered a Franks hearing after hearing Cawiezell's trial testimony, and he now argues that Lynn was ineffective for failing to raise a similar argument during the trial. Tenth Circuit precedent is clear that "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). Criminal defendants may not use § 2255 motions as a substitute for a direct appeal, and failure to raise an issue at trial or on direct appeal creates a procedural bar. United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004); United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002). A procedural bar also arises when claims were raised on direct appeal and the claims have been considered and rejected by the appellate court. Warner, 23 F.3d at 291. Procedural default can be excused if the defendant can show that cause and prejudice exist to excuse the default or that a fundamental miscarriage of justice has occurred. Barajas-Diaz, 313 F.3d at 1247. Defendant bears the burden to show cause and prejudice or that a fundamental miscarriage of justice requires a court to excuse his procedural default. George v. Perrill, 62 F.3d 333, 335 (10th Cir. 1995). A defendant may establish cause to excuse a procedural default if he can show that a claim was not raised on direct appeal due to ineffective assistance of counsel. United States v. Cox, 83 F.3d 336 (10th Cir. 1996). The fundamental miscarriage of justice exception is "a markedly narrow one, implicated only in 'extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" United States v. McGaughy, 670 F.3d 1149, 1159 (10th Cir. 2012) (quoting Magar v. Parker, 490 F.3d 816, 820 (10th Cir. 2007)).

Defendant devotes most of his § 2255 motion to the issue of whether defense counsel should have requested a <u>Franks</u> hearing or requested reconsideration of the motion to suppress after hearing Cawiezell's trial testimony, because the trial testimony contradicted statements contained in the affidavits for search warrant prepared by Cawiezell.  Defendant attempts to avoid the procedural default by framing his primary claim in terms of ineffective assistance of counsel, rather than a substantive claim.  The Court has reviewed the Tenth Circuit's decision and the arguments advanced in defendant's § 2255 motion, and it is clear that defendant is asserting the same argument that has already been considered and rejected by the Tenth Circuit.  Defendant argued on appeal that Cawiezell testified at trial that no one told Cawiezell that they saw defendant with the rifle or the heroin recovered during the search of the residence, and Cawiezell also acknowledged at trial that he did not know when the methamphetamine entered the residence or if defendant had personally seen the methamphetamine.  Dkt. # 111, at 7.  Defendant relies on the same testimony in his § 2255 motion in an attempt to show that Cawiezell made false or misleading statements in his November 2019 affidavit for a search warrant.  Dkt. # 115, at 18; Dkt. # 122, at 6-8.  Defendant's only attempt to distinguish between the arguments asserted on appeal and in his § 2255 motion is a vague assertion that the appellate court may have reached a different decision had Lynn provided effective assistance of counsel by filing a renewed motion to suppress.  Dkt. # 122, at 10.  This argument does not suggest that the appellate record was incomplete or inaccurate, and the Court finds no meaningful distinction between the arguments raised on direct appeal and in defendant's § 2255 motion.  Defendant's claim was considered and rejected on direct appeal, and defendant has not shown any basis to excuse the procedural default.

Even if defendant could avoid the procedural default, he must show that a reasonable attorney would have requested a Franks hearing or renewed defendant's motion to suppress and that the failure to do so affected the outcome of the trial. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

Defendant acknowledges that Lynn asked "pointed" questions while cross-examining Cawiezell at trial, and it was Lynn's cross-examination that elicited the allegedly contradictory statements from Cawiezell. Dkt. # 122, at 6-7. The Tenth Circuit determined that Cawiezell's trial testimony did not contradict statements in his affidavits for search warrants, and the Court's review of the trial transcript shows that Lynn's cross-examination of Cawiezell fell squarely within the range of reasonable professional assistance. Plaintiff's case against defendant was relatively strong and one of the key areas that defense counsel could attack was the credibility of plaintiff's key witness, Cawiezell. Lynn used his cross-examination of Cawiezell to highlight gaps in the plaintiff's

case, particularly the lack of direct evidence showing defendant in possession of drugs or a firearm.

Lynn could have renewed defendant's motion to suppress or sought a <u>Franks</u> hearing during trial,

but this would likely have distracted the jury from the points he made during Cawizell's cross-

examination. Defendant has not shown that Lynn's performance fell outside of the range of

reasonable professional assistance, and he has not shown that Lynn provided ineffective assistance

of counsel by failing to renew defendant's motion to suppress or by failing to request a <u>Franks</u>

hearing.

Defendant argues that Lynn failed to raise a defense to the § 924(c) charge (count seven),

and he claims that a reasonable attorney would have offered an argument that defendant could not

have constructively possessed a firearm. Dkt. # 115, at 36. Plaintiff responds that Lynn argued that

defendant did not constructively possess a firearm and, even if defendant did possess a firearm, that

such possession was not in furtherance of a drug trafficking crime. Plaintiff's argument is supported

by the record, and it is clear that Lynn did assert a defense to the § 924(c) charge. Lynn questioned

Cawiezell about whether there was a lawful purpose for owning a firearm, and Cawiezell

acknowledged that there are legal purposes for owning a firearm. Dkt. # 98, at 113. This line of

inquiry directly challenged an essential element of the § 924(c) charge, and the record is clear that

Lynn attempted to raise a reasonable doubt as to the purpose of defendant's possession of a firearm.

In his closing argument, Lynn also argued that there was no direct evidence that defendant had

possessed any of the firearms found in the residence, and he argued that defendant "wasn't using

guns to help deal drugs . . . ." Dkt. # 99, at 58-59. This argument was consistent with Lynn's cross-

examination of witnesses, and a key theme of Lynn's argument was the plaintiff's lack of direct

evidence tying defendant to drugs and guns found in the residence. Lynn raised a defense to the §

924(c) charge on the grounds that defendant did not possess a firearm or did not possess a firearm in furtherance of a drug trafficking crime, and defendant has not shown that Lynn's performance was deficient on this issue.

Finally, defendant argues that Lynn failed to investigate whether defendant actually resided at 4331 North Elgin Avenue, and he claims that questioning plaintiff's witnesses about who resided at the residence would have raised a reasonable doubt as to defendant's guilt. Dkt. # 115, at 37. The Court has reviewed the trial transcript and defendant's argument is not supported by the record. Defendant's grandmother, Liza McKinney-Cato, testified that she owns the residence located at 4331 North Elgin Avenue, and she permitted defendant to live at the residence. Dkt. # 98, at 39. Lynn's cross-examination established that McKinney-Cato permitted other relatives to stay at the residence, and at no time had she seen drugs or guns at the residence. Id. at 41-42. On cross-examination of Cawiezell, Lynn established that police officers had not conducted long term surveillance of the residence and had no idea how many people regularly had access to the house. Id. at 110-11. Cawiezell admitted that he did not know if anyone, including defendant, used the house as a temporary or permanent residence, and Cawiezell also acknowledged that the rifle found in the closet could have been placed in the residence before defendant used the residence. Id. at 111-12. Men's clothing was found in a closet, but Lynn established that Cawiezell took no actions to verify whether the clothing belonged to defendant. Id. at 124-25. Lynn's cross-examination of Cawiezell also brought out that defendant's driver's license did not list 4331 North Elgin Avenue as his residence and defendant drove a car with a Kansas license plate. Id. at 128-29. Lynn relied on these points during his closing argument, and he asked the jury to consider the lack of evidence tying defendant to the drugs and firearms found during the two searches of the residence. Dkt. # 99,

at 207-12.  Plaintiff points out  that Lynn had to carefully question witnesses about this line of

inquiry, because plaintiff had significant  evidence showing that defendant actually resided at 4331

North Elgin Avenue.  Dkt. # 121, at 13-14.  The Court finds that Lynn's performance with regard

to the issue of defendant's residency at 4331 North Elgin Avenue was reasonable and, in any event,

defendant has made no attempt to show that he was actually prejudiced by Lynn's conduct.

The Court has broadly construed defendant's § 2255 motion and can find no other possible

ineffective assistance of counsel claims that defendant could be alleging.  The three ineffective

assistance claims that defendant has asserted are meritless, and the Court finds no basis to vacate

any of defendant's convictions or his sentence.  Therefore, defendant's § 2255 motion (Dkt. # 115)

is denied.

### III.

The Court must also consider whether to issue a certificate of appealability (COA) on any

issue raised in defendant's § 2255 motion.  Pursuant to 28 U.S.C. § 2253, a defendant is required

to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255.  Section

2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial

showing of the denial of a constitutional right," and the court "indicates which specific issue or

issues satisfy [that] showing."  A defendant can satisfy that standard by demonstrating that the issues

raised are debatable among jurists, that a court could resolve the issues differently, or that the

questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v.

Estelle, 463 U.S. 880, 893 (1983)).  After considering the record in this case, the Court concludes

that a COA should not issue because defendant has not made a substantial showing of the denial of

a constitutional right.  The Court does not find that the issues raised by defendant are debatable

among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not

made a substantial showing of the denial of a constitutional right.

   **IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct

sentence under 28 U.S.C. § 2255 (Dkt. # 115) is **denied**.  A separate judgment is entered herewith.

   **IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability

as to any issue raised in defendant's § 2255 motion.

   **DATED** this 6th day of August, 2024.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE